**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOANNE F. BALBARIN, | ) | |
| on behalf of herself and a class and subclasses, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 10 C 1846 |
| v. | ) | |
| | ) | Judge Bucklo |
| NORTH STAR CAPITAL ACQUISITION, LLC; | ) | Magistrate Judge Cox |
| ZENITH ACQUISITION CORPORATION; | ) | |
| DATA SEARCH N.Y. INC. d/b/a TRAKAMERICA; | ) | |
| BLITT and GAINES, P.C.; and NELSON, WATSON | ) | |
| & ASSOCIATES, LLC | ) | |

| | | |
|---|---|---|
| CARLA A. HUBBS, | ) | |
| on behalf of herself and a class and subclasses, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 10-cv-2154 |
| | ) | (Reassigned for Relatedness) |
| WELTMAN, WEINBERG & REIS CO., L.P.A., | ) | |
| and DATA SEARCH NY, INC., d/b/a | ) | Judge Bucklo |
| TRAK AMERICA, | ) | Magistrate Judge Cox |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
<u>AMENDED MOTION FOR CLASS CERTIFICATION</u>**

**I. INTRODUCTION**

Plaintiffs Joanne F. Balbarin and Carla A. Hubbs, individually and on behalf of themselves and classes and subclasses, have requested certification of several classes and subclasses against Defendants Data Search N.Y., Inc. d/b/a TrakAmerica ("TrakAmerica") North Star Capital Acquisition, LLC ("North Star"), Weltman, Weinberg & Reis Co., LLC ("WWR"), Blitt & Gaines, P.C. ("Blitt"), and Nelson, Watson & Associates ("Nelson").

1

**A. FDCPA CLAIM**

Plaintiffs complain that Defendant TrakAmerica violated the FDCPA, 15 U.S.C. §1692e(14), in connection with causing the filing of state court debt collection complaints in the name of another company, creating affidavits in the litigation that appear to come from other companies, and thereby conducting debt collection litigation in the name of another company. FDCPA § 1692e(14) prohibits, "The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization. . . ."

Plaintiffs allege that TrakAmerica, WWR, and Blitt engaged in an unfair and deceptive practice, in violation of the FDCPA, 15 U.S.C. §§1692e and 1692f, by filing lawsuits in which WWR and Blitt were receiving instructions and communications from TrakAmerica and not the owners of the accounts, under circumstances where such conduct was prohibited by state law.

**B. TCPA CLAIMS**

Balbarin also complains that Defendants Nelson and Blitt violated the Telephone Consumer Protection Act ("TCPA"). The TCPA, in pertinent part, prohibits any person, "to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice" "to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). A violation of the TCPA can be triggered regardless of whether a charge was actually incurred by the placement of the call to a cell phone. *Abbas v. Selling Source, LLC*, 09 C 3413, 2009 U.S. Dist. LEXIS 116697 * 9-10 (N.D. Ill. Dec. 14, 2009) (Gottschall, J.); *Lozano v. Twentieth Century Fox Film Corp.*, 09 C 6344, 2010 U.S. Dist. LEXIS 27447 * 26 – 27 (N.D. Ill. Mar. 23, 2010) (St. Eve, J.) (same). The TCPA also does not require that the call made by the automated telephone equipment be answered to trigger a violation. *See Lozano*, 2010 U.S. Dist. LEXIS 27447 at * 17 – 18 (*quoting Abbas*, 2009 U.S. Dist. LEXIS 116697 at * 16) ("'the definition of 'call' includes 'to communicate with or *try to communicate* with a person by telephone,'") (emphasis added); (*Joffe v. Acacia Mortgage Corp.,* 211 Ariz. 325, 329, 121 P.3d 831 (Az. Ct. App. 2005) ("'given that the TCPA was enacted to regulate the receipt of automated telephone calls, Congress used the word call to refer to *an attempt to communicate by*

*telephone*'") (emphasis added).

As demonstrated by the opinions of nine different district court judges, the trend in the Northern District of Illinois is to grant class certification in cases brought under the TCPA. *Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802, 808 (N.D. Ill. 2008) (Bucklo, J.); *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 143 (N.D. Ill. 2009) (Kennelly, J.); *G.M. Sign, Inc. v. Group C Communs., Inc.*, 08 C 4521, 2010 U.S. Dist. LEXIS 17843 * 16-17 (N.D. Ill. Feb. 25, 2010) (Darrah, J.); *Targin Sign Sys. v. Preferred Chiropractic Ctr., Ltd.*, 09 C 1399, 2010 U.S. Dist. LEXIS 4581 (N.D. Ill. Jan. 21, 2010) (Shadur, J.); *Holtzman v. Turza*, 08 C 2014, 2009 U.S. Dist. LEXIS 95620 * 1 (Oct. 14, 2009) (Gettleman, J.); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 2009 U.S. Dist. LEXIS 73869 * 20-21 (N.D. Ill. Aug. 20, 2009) (Kendall, J.); *Green v. Service Master on Location Servs. Corp.*, 2009 U.S. Dist. LEXIS 53297 * 10-11 (N.D. Ill. June 22, 2009) (Hibbler, J.); *G.M. Sign, Inc. v. Franklin Bank, S.S.B.,* 06 C 79827, 2008 U.S. Dist. LEXIS 79827 * 18-19 (N.D. Ill. Aug. 20, 2008) (Kocoras, J.); *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 * 4-5 (N.D. Ill. May 27, 2008) (Aspen, J).

Courts outside of this jurisdiction have also certified TCPA classes. *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 645 (W.D. Wash. 2007); *Am. Home Servs., Inc. v. A Fast Sign Co., Inc.,* 651 S.E.2d 119, 121 (Ga. Ct. App. 2007); *Display South, Inc. v. Express Computer Supply, Inc.*, 961 So.2d 451, 455 (La. App. 1st Cir. 2007); *Lampkin v. GGH, Inc.*, 146 P.3d 847, 856 (Okla. Ct. App. 2006) (reversing trial court's denial of class certification); *See ESI Ergonomic Solutions, LLC, v. United Artists Theatre Circuit, Inc.*, 50 P.3d 844, 846 (Ariz. Ct. App. 2002) (reversing and remanding denial of class certification); *State of Texas v. American Blast Fax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001) (state enforcement action); *Nicholson v. Hooters of Augusta, Inc.*, 245 Ga. App. 363, 537 S.E.2d 468 (Ga. Ct. App. 2000) (private class actions).

In addition to the certified TCPA cases above, one cellular phone TCPA settlement class was given final approval in *Bellows v. NCO Fin. Sys.,* 2008 U.S. Dist. LEXIS 103525 (S.D. Cal. Dec. 10, 2008). "[W]hether for litigation or for settlement, before certifying a class, the district court must find that the prerequisites for class certification set forth in Rule 23 are satisfied." *All*

3

*Bromine Antitrust Plaintiffs v. All Bromine Antitrust Defendants*, 203 F.R.D. 403, 406 (S.D. Ind. 2001); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848-49, (1999) (requiring "heightened" Rule 23 analysis when district court certifies class for class action settlement only); *Kaufman v. Am. Express Travel Related Servs. Co.*, 07 C 1707, 2009 U.S. Dist. LEXIS 119397 * 6 (N.D. Ill. Dec. 2, 2009) ("Before addressing the substantive provisions of the Settlement Agreement, the court must first determine whether the proposed Class can be certified."). The *Bellows* cell phone TCPA settlement class was defined and approved as follows:

> All natural and juridical persons within the United States who were called by NCO, without prior express consent, on their paging service, cellular telephone service, mobile radio service, radio common carrier service, or other service for which they were charged for the call, through the use of any automatic telephone dialing system (including an automated dialing machine, dialer, and auto-dialer) or artificial or prerecorded voice, between August 2, 2003 and September 10, 2008, *i.e.*, the date the Order of Preliminary Approval of Class Action Settlement was entered by the Court.

*Id.* at * 27.

## II. ARGUMENT

The purpose of a class action is to promote judicial economy by avoiding duplicative suits against the same defendant, and to protect the rights of persons who may not be able to assert their claims on an individual basis. *Crown, Cork, & Seal Co. v. Parking*, 462 U.S. 345 (1983). As the United States Supreme Court has observed, "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). "Class actions …permit the plaintiffs to pool claims which would be uneconomical to litigate individually * * * most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum v. Shutts*, 472 U.S. 797, 808-809 (1985); *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1977) (class actions aggregate "relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."); *Warcholek v. Medical Collections Sys.*, 241 F.R.D. 291, 296 (N.D. Ill. 2006) (finding that certifying a class in an FDCPA matter where individual statutory damages up to $1,000 are available is superior as the defendants' "conduct would go otherwise unchallenged if a class was not certified").

It is not necessary for the plaintiffs to establish that they will prevail on the merits of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (internal quotation marks and citation omitted); *Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002) ("[A] determination of the propriety of class certification should not turn on the likelihood of success on the merits.").

While "[t]he court maintains broad discretion to determine whether a proposed Class satisfies the requirements [it] should err in favor of maintaining class actions." *Rahman v. Chertoff*, 244 F.R.D. 443, 447 (N.D. Ill. 2007) (*citing King v. Kansas City S. Indus.*, 519 F.2d 20, 26 (7th Cir. 1975); *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 480 (7th Cir. 1980)).

> Fed. R. Civ. P. 23(a) provides that an action may proceed as a class if:
>
> (1) the class is so numerous that the joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In this matter, plaintiffs request that the Court certify the following FDCPA class and subclasses:

> (a) all natural persons (b) against whom a lawsuit was filed in an Illinois court (c) in a case sent to a lawyer by Trak America (d) which lawsuit was filed or served, or the last filing in the state court lawsuit occurred, on or after March 24, 2009 and on or before April 13, 2010.

Plaintiffs also request certification of 2 subclasses, A and B. Subclass A consists of class members whose cases were sent to WWR. Subclass B consists of class members whose cases named North Star as the Plaintiff and were sent to Blitt.

Balbarin also requests that this Court certify the following TCPA classes:

> The TCPA class against Defendant Nelson is defined as:
>
> (a) All persons with a cellular telephone numbers in the Illinois area codes (217), (224), (309), (312), (331), (464), (618), (630), (708), (773), (779), (815), (847) or (872) (b) who, on or after March 24, 2006 (28 U.S.C. §1658), and on or before April 13, 2010, (c) received automated calls with a prerecorded message from Defendant Nelson, Watson & Associates, LLC (d) in an attempt to collect a debt

5

on behalf of North Star (e) where Defendant Nelson, Watson & Associates, LLC's records do not show that the person provided the number to Defendant Nelson, Watson & Associates, LLC or the original creditor.

The TCPA class against Defendant Blitt is defined as:

(a) All persons with a cellular telephone numbers in the Illinois area codes (217), (224), (309), (312), (331), (464), (618), (630), (708), (773), (779), (815), (847) or (872) (b) who, on or after March 24, 2006 (28 U.S.C. §1658), and on or before April 13, 2010, (c) received automated calls with a prerecorded message from Defendant Blitt and Gaines, P.C. (d) in an attempt to collect a debt on behalf of North Star (e) where Defendant Blitt & Gaines' records do not show that the person provided the number to Defendant Blitt & Gaines or the original creditor.

**A.     NUMEROSITY**

To establish numerosity a plaintiff is, "not required to allege the exact number or identity of the class members." *Hinman v. M&M Rental Ctr.*, 545 F. Supp 2d 802, 806 (N.D. Ill. 2008). Furthermore, a plaintiff can use statistical percentages to establish numerosity "beyond mere speculation" that the size of the putative class is sufficiently large. *Rahman*, 244 F.R.D. at 450.

    **1.     FDCPA**

The Cook County Clerk of the Court website shows that on May 1, 2009, alone Blitt filed 24 lawsuits on behalf of North Star. A copy clerk's webpage listing hundreds of cases filed on behalf of North Star is attached hereto as <u>Exhibit A</u>[1], with the first and last cases of the May 1, 2009 bulk filing are attached hereto as <u>Exhibit B</u>. The Cook County Clerk of the Court website demonstrates that Blitt's last filing of a complaint in Cook County on behalf of North Star was March 29, 2010. <u>Exhibit C</u>.

Additionally, TrakAmerica has been sued before for violating the FDCPA §1692e(14), which settled on a class basis in *Sylverne v. Data Search N.Y., Inc.*, 08 C 31 (N.D. Ill.). In *Data Search N.Y., Inc.*, the class in the consolidated class complaints consisted of persons whom legal proceedings were filed in Illinois or Indiana on behalf of seven partners, including North Star here, from on or after January 1, 2007 to June 19, 2008, that included a form affidavit from a

---

[1] The exhibits are attached to Plaintiff's Motion for Class Certification. Furthermore, not all of the cases listed in the exhibit that were brought in North Star's name were filed by Blitt. A random sample showed that from that random sample only one of the North Star cases was not filed by Blitt.

Trak America employee. *Sylverne v. Data Search N.Y., Inc.*, 08 C 31, Dkt. 148, Final Approval Memorandum (N.D. Ill. Aug 13, 2009) (Exhibit D.) According to the final approval memorandum, TrakAmerica had been involved in the collection of a debt in 37,134 state court proceedings without disclosing its identity.

Given the volume of lawsuits that Blitt has filed on behalf of North Star within the past year, and TrakAmerica's involvement in over 37,000 cases over a year and a half time period, it is not unrealistic to estimate that a class of at least 40 members exists here. An estimated class of approximately 40 members satisfies the numerosity requirement. *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969) (forty members usually satisfies the numerosity requirement); Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 3:5 (4th ed. 2007) ("a good-faith estimate should be sufficient when the number of class members is not readily ascertainable."). Discovery will hopefully determine the exact number of members of the proposed class.

### 2. TCPA

The Consolidated Complaint notes that according to Nelson's website it uses "the latest electronic tools to help [our collection staff] identify and find *'lost'* accounts. (Consol. Complt. ¶19) (*quoting* https://www.nelsonwatson.com/about.php). Apparently Nelson's specialty is skip tracing accounts where the original creditor's information regarding the consumer is no longer accurate. Therefore, no permission can be provided by the consumer to Nelson to call a telephone number it obtained through skip tracing; such is the case here where it is believed Nelson obtained Balbarin's cellular telephone number from her consumer report. (Consol. Complt. ¶ 35, 85-86). Given Nelson's website statement above and that it is alleged that Balbarin's cellular telephone number was obtained from a source other than the original creditor of the subject debt, it is more than likely that there are more than 40 persons who meet the class definition.

Also, as demonstrated by the Exhibits A-C, Blitt is involved in the collection of hundreds of accounts on behalf of North Star. It is a common practice of Blitt to use a automatic dialer with a prerecorded message. Therefore, it is not unreasonable to estimate based on the

stipulation and survey research attached that the class is comprised of at least 40 members. This is especially true since the TCPA proposed class time period covers four years. An estimated class of approximately 40 members satisfies the numerosity requirement *See Swanson v. Am. Consumer Indus., Inc*., 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969) (40 members usually satisfies the numerosity requirement); Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 3:5 (4th ed. 2007) ("a good-faith estimate should be sufficient when the number of class members is not readily ascertainable."). Discovery will ultimately determine the number of persons in the two proposed TCPA classes.

      A statistical survey done by the Pew Research Center which found that in 2005 7% - - 9% of the general public have only a cell phone. Exhibit G, Pew Research Center for the People & the Press, The Cell Phone Challenge to Survey Research, May 15, 2006, *available at* http://people-press.org/report/276/ (last visited March 26, 2010). In 2008, Fact Check.org reported a Pew commissioned poll indicating that that out of 3,437 persons surveyed, 2,596 were done by landline and 841 were done by cell phones (approximately 24.5% of all calls done in the poll) and out of those cell phone users 312 (approximately 9% of all polled) reported that there cell phone was their *only* telephone. Exhibit H, FactCheck.org, Are Polls Skewed Because May People Only Have Cell Phones? (Feb. 21, 2008) *available at* http://www.factcheck.org/askfactcheck/are_polls_skewed because_many_people_only.html. (last visited March 26, 2010).

**B.**    **COMMONALITY**

      The focus of the commonality requirement is whether there exists "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A common nucleus of operative facts is enough to satisfy the commonality requirement. *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir. 1992). "A common nucleus is generally found when the defendant has engaged in standardized conduct towards the members of the proposed class." *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 392 (N.D. Ill. 2006) (*citing Keele,* 149 F.3d at 594; *McCabe v. Crawford & Co.,* 210 F.R.D. 631, 644 (N.D. Ill. 2002); *Hinman*, 545 F. Supp. 2d at 806 ("Seventh Circuit precedent teaches that commonality and typicality are generally met where, as here, a defendant engages in a standardized course of conduct vis-a-vis the class members and plaintiffs' alleged

injury arises out of that conduct."); *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984) (Where a question of law involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met."). When "at least one question of law or fact [is] common to the class," commonality is satisfied. *Tylka v. Gerber Prods. Co.,* 178 F.R.D. 493, 496 (N.D. Ill. 1998). Finally, "The commonality requirement has been characterized as a 'low hurdle' easily surmounted." *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

In addition, class certification is proper under Rule 23(b)(3) where common questions of law or fact predominate over individual questions. The predominance requirement is met when a common factual link between the class members and defendants under which the law requires a remedy exists. *Smith v. Nike Retail Servs. Inc*. 234 F.R.D. 648, 666 (N.D. Ill. 2006); 7A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1778, at 528 (2d ed. 1986) (Predominance is met "when common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for having the dispute on a representative rather than on an individual basis"). "Generally, when a class challenges a uniform policy or practice, the validity of the policy or practice tends to be the predominant issue in the ensuing litigation." *CE Design Ltd.*, 259 F.R.D. 135, 142 (N.D. Ill. 2009) (*citing General Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).

### 1.  FDCPA

Plaintiffs complain that Defendant TrakAmerica violated the FDCPA, 15 U.S.C. §1692e(14), in connection with causing the filing of state court debt collection complaints in the name of another company, created affidavits in the litigation that appear to come from other companies, and thereby conducted debt collection litigation in the name of another company.. Plaintiffs allege that TrakAmerica, WWR, and Blitt engaged in an unfair and deceptive practice, in violation of the FDCPA, 15 U.S.C. §§1692e and 1692f, by filing lawsuits in which WWR and

9

Blitt were receiving instructions and communications from TrakAmerica and not the owners of the accounts, under circumstances where such conduct was prohibited by state law As such, the common questions in this case are (a) whether Trak America's failure to disclose its involvement in state court debt collection litigation violates the FDCPA and (b) whether allowing a lay corporation such as TrakAmerica to direct and manage collection lawsuits under circumstances prohibited by state law and likely to give rise to improper acts harming the persons sued is deceptive or unfair, in violation of the FDCPA. These common questions satisfy Rule 23(a)(2) and Rule 23(b)(3).

### 2. TCPA

Defendants Nelson and Blitt engaged in a common course of conduct towards Balbarin and the proposed class members by having their respective automatic dialers with a prerecorded message call Balbarin's and the class members' cellular telephones without obtaining permission from Balbarin and the class members.

It is anticipated that these defendants will argue that Balbarin's claims are not common or typical because an individualized review of its records to determine whether a person consented to have their cell phone called. However, in a TCPA case, the "issue of consent is an affirmative defense, which does not defeat commonality or typicality." *Green*, 2009 U.S. Dist. LEXIS 53297 * 6 n. 2 (*citing Wagner v. Nutrasweet Co*., 95 F.3d 527, 534 (7th Cir. 1996); *Finish Thompson, Inc*., 2009 U.S. Dist. LEXIS 73869 * 13 (*citing De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983)) (same); *Dunn v. City of Chicago,* 231 F.R.D. 367, 375-76 (N.D. Ill. 2005) ("the existence of individualized defenses does not preclude class certification").

In *Hinman*, the court addressed and rejected defendant's argument against commonality and typicality that an "individualized analysis" would be required to determine who consented to receive a fax holding, "The possibility that some of the individuals on the list may separately have consented to the transmissions at issue is an insufficient basis for denying certification."

10

*Hinman*, 545 F. Supp. 2d at 807. The court's rationale in *Hinman* is sound. *Id*. at 806-807 (*quoting Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("Commonality is satisfied by showing 'a common nucleus of operative fact.'"); *De La Fuente,* 713 F.2d at 232 (7th Cir. 1983) ("Typicality is met if the class representative's claim 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'"). The court correctly pointed out that the "question of consent may rightly be understood as a common question." *Hinman*, 545 F. Supp. 2d at 807 (*citing Kavu, supra*, 246 F.R.D. 642, WL 201093, at \*3 (W.D. Wash., 2007) ("consent common question where defendant obtained recipients' fax numbers from a particular database").

In the most recent TCPA class certification decision issued by the Northern District of Illinois, *G.M. Sign, Inc. v. Group C Communs., Inc.*, the court likewise rejected the defendant's argument that under the plaintiff's proposed class definition an individual inquiry into whether each class member consented to receiving the fax would required. *Group C Communs., Inc.*, 2010 U.S. Dist. LEXIS 17843 at \* 9 – 10. In doing so the court noted that *Hinman*'s basis for rejecting a similar argument of individualized analysis was "persuasive." *Id*. at \* 10. Likewise, in *Targin Sign Sys.*, the court in granting class certification stated that, "As for 'typicality' and 'commonality,' any claimed issue of consent by the faxees (if this Court is allowed to commit a barbarism by coining a term to describe the fax recipients) is more accurately a nonissue. [The defendant] is by definition the party that possesses the information needed to confirm any prior consent--*if* it exists, that is." *Targin Sign Sys.*, 2010 U.S. Dist. LEXIS 4581 at \* 10. The unlikely event that a debtor actually contacted either Nelson or Blitt and gave them permission to call his or her cellular telephone prior the first automated call with a prerecorded message that was made to that person is an insufficient basis for denying certification. *See Hinman*, 545 F.Supp.2d at 807.

The focus of the commonality requirement is whether there exists "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As one court has noted, common questions of law and fact in a TCPA junk fax case are as follows:

11

> whether the faxes were advertisements; whether any of the recipients consented to the transmissions; whether defendant violated the TCPA by sending the fax to those individuals who had not given consent; whether defendant violated the TCPA by failing to include an opt-out notice on the fax; whether class members are entitled to statutory damages; and whether defendant's acts were 'willful' or 'knowing' under the TCPA, thus entitling class members to treble damages.

*Holtzman,* 2009 U.S. Dist. LEXIS 95620 at * 13

Likewise here, the common questions of fact and law are: (1) whether Nelson and Blitt violated the TCPA by making calls with an auto-dialer using a prerecorded message to persons' cell phones without permission; and (2) whether these Defendants' acts were "willful" under the TCPA, thus entitling each class member to treble damages per violation.

**C.     TYPICALITY**

Commonality and typicality requirements under Rule 23 are interrelated and often overlap. *Hyderi v. Washington Mutual Bank, FA*, 235 F.R.D. 390, 396 (N.D. Ill. 2006). The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. *De La Fuente*, 713 F.2d at 232. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory". *Id.* Rule 23(a)(3) requires that, "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

   **1.     FDCPA**

Plaintiffs' and the class' claims arise from Defendant TrakAmerica's practice of causing the filing of state court debt collection complaints in the name of another company, created affidavits in the litigation that appear to come from other companies, and thereby conducted debt collection litigation in the name of another company. Plaintiffs also alleged that 15 U.S.C. §§1692e and 1692f where WWR and Blitt were receiving instructions and communications in state court debt collection lawsuits from TrakAmerica and not the owners of the accounts.  Thus, all of the class members have the same claim arising from Defendants' practices.  Each member

12

was subjected to the same conduct and all of the claims are based upon the same legal theories. Rule 23(a)(3) is satisfied in this case.

### 2. TCPA

Typicality, "should be determined with reference to [the defendant's] actions, not with respect to particularized defenses it might have against certain class members." *Wagner*, 95 F.3d at 534. Typically is established in a TCPA class where a the "plaintiff brings the same TCPA claim that will be advanced by the class." *Holtzman,* 2009 U.S. Dist. LEXIS 95620 at * 13 (*citing Franklin Bank, S.S.B*., 2008 U.S. Dist. LEXIS 79827). Here Balbarin's and the class' claims arise from Nelson's or Blitt's attempts to collect a debt using an automatic dialer with a prerecorded message. Thus, all of the class members have the same claim arising from these Defendants' practices. Each member was subjected to the same conduct and all of the claims are based upon the same legal theory.

### D. ADEQUACY OF REPRESENTATION

Rule 23(a)(4)'s prerequisite consists of the following factors: (1) whether the plaintiffs' attorney is qualified, experienced, and generally able to conduct the proposed litigation; (2) whether the class representatives have interests that are antagonistic to the class; and (3) whether the class representatives have a sufficient interest in the case to assure vigorous advocacy. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

"Adequacy" is met when the representative's interests are not antagonistic to or in conflict with those of the other class members. *Uhl v. Thoroughbred Tech. and Telecom., Inc*., 309 F.3d 978, 985 (7th Cir. 2002). In a class action, "the class representative's role is limited." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir. 1981). An adequate class representative need only be conscientious and have a basic understanding of the litigation at hand. *Carbajal v. Capital One*, 219 F.R.D. 437, 442 (N.D. Ill. 2004). "[T]he standard for serving as class representative is not particularly demanding." *In re Ocean Bank*, 06 C 3515, 2007 U.S. Dist. LEXIS 29443 * 25 (N.D. Ill. Apr. 27, 2007). Plaintiffs are aware of their claims and no antagonism exists between Plaintiffs and the class members.

The second consideration in determining adequacy of representation is whether Plaintiffs' counsel are qualified, experienced, and able to conduct the proposed litigation. *Rosario*, 963 F.2d at 1018; Fed. R. Civ. P. 23(g).

Hubbs' counsel submits the declaration Daniel A. Edelman in support of Edelman, Combs, Latturner & Goodwin, LLC's adequacy as class counsel and for its appointment as counsel for the class under Rule 23(g). Exhibit F.

Balbarin's counsel has specifically been found to be adequate class counsel meeting the requirements of Rule 23(a)(4). *Cavin v. Home Loan Center, Inc.* 236 F.R.D 387, 395 (N.D. Ill. 2006) ("The Court finds that Mr. Warner [is]. . . 'experienced, competent, qualified and able to conduct the litigation vigorously'"). *Id*. at 395. Furthermore, "[t]he fact that attorneys have been found adequate in other cases 'is persuasive evidence that they will be adequate again.'" *Morris v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 336, 344 (N.D. Ill. 2001) (*quoting Gomez v. Illinois State Bd. Of Ed.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987)). In *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852 (7th Cir. 2009), the Seventh Circuit commented that Balbarin's counsel is "an FDCPA specialist." *Id.* at 855. Balbarin submits the declaration of Curtis C. Warner in support of the Warner Law Firm, LLC's adequacy as class counsel and for its appointment as counsel for the class under Rule 23(g). Exhibit E.

**E.     SUPERIORITY**

Class certification is proper under Rule 23(b)(3) where a class action represents a superior method for the fair and efficient adjudication of the controversy. The resolution of a civil matter, "on a classwide basis, rather than in thousands of individual lawsuits would be an efficient use of both judicial and party resources." *Hinman*, 545 F. Supp. 2d at 808. Rule 23(b) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortgage Corp*., 434 F.3d 948, 953 (7th Cir. 2006). Reliance on the rare individual willing to incur the time and expense of seeking the small damages available is not sufficient to ensure that, "it ought not to be cheaper to violate the Act and be sued than to comply with the statutory requirements. *Bueno v. Mattner*,

14

633 F. Sup. 1446, 1467 (W.D. Mich. 1986) (*quoting Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317, 1332-33 (5th Cir. 1985)).

Certifying a class is the "superior" way when the "'class action would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Prods. v. Windsor,* 521 U.S. 591, 615 (1997) (*quoting* Adv. Comm. Notes, 28 U.S.C. App., at 697); *Scholes,* 143 F.R.D. at 183 ("Equally important, judicial economy and efficiency, as well as consistent judgments, are achieved by certifying the class."). Given the estimated large number of individual lawsuits that would be required if a class was not certified, a class action presents a superior method to fairly and efficiently adjudicate all of the claims of the class in this case, within the meaning of Rule 23(b)(3).

### III. CONCLUSION

WHEREFORE, for the reasons above and in their accompanying memorandum, Plaintiffs request that this Honorable Court certify the above classes and subclasses, appoint Plaintiffs as the class representatives, and appoint Plaintiffs' counsel as counsel for the class.

Respectfully submitted,

| | |
|---|---|
| s/Daniel A. Edelman | s/ Curtis C. Warner |
| Daniel A. Edelman | Curtis C. Warner |
| | |
| Daniel A. Edelman | Curtis C. Warner (6282197) |
| Cathleen M. Combs | cwarner@warnerlawllc.com |
| James O. Latturner | Warner Law Firm, LLC |
| Tiffany N. Hardy | Millennium Park Plaza |
| EDELMAN, COMBS, LATTURNER | 155 N. Michigan Ave. Ste. 560 |
|     & GOODWIN, LLC | Chicago, Illinois 60601 |
| 120 S. LaSalle Street, 18th Floor | (312) 238-9820 (TEL) |
| Chicago, Illinois 60603 | |
| (312) 739-4200 | |
| (312) 419-0379 (FAX) | |

## **CERTIFICATE OF SERVICE**

      I, Daniel A. Edelman, hereby certify that on June 24, 2010, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system and notification of such filing was sent to the following parties:

Curtis C. Warner
cwarner@warnerlawllc.com

David M. Schultz
dschultz@hinshawlaw.com

Justin M. Penn
jpenn@hinshawlaw.com

Brian J. Olszewski
brian.olszewski@blittandgaines.com

Patrick J. Ruberry
ruberry@litchfieldcavo.com

Philip F Cuevas
cuevas@litchfieldcavo.com

Jason E. Hunter
hunter@litchfieldcavo.com

John J. Duffy
john.duffy@dbmslaw.com

George K. Samuel
samuel@dbmslaw.com

                                                  s/Daniel A. Edelman
                                                  Daniel A. Edelman