UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOANNE F. BALBARIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NORTH STAR CAPITAL ACQUISITION, | ) | Case No.: 10 CV 01846 |
| LLC; ZENITH ACQUISITION | ) | |
| CORPORATION; DATA SEARCH N.Y. | ) | Judge Bucklo |
| INC. d/b/a TRACKAMERICA; BLITT | ) | |
| AND GAINES, P.C.; and NELSON, | ) | Magistrate Judge Cox |
| WATSON & ASSOCIATES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| CARLA A. HUBBS, | ) | |
| on behalf of herself and a class and subclasses, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 10 CV 02154 |
| v. | ) | (Reassigned for Relatedness) |
| | ) | |
| WELTMAN, WEINBERG & REIS CO., L.P.A., | ) | Judge Bucklo |
| and DATA SEARCH NY, INC., d/b/a | ) | |
| TRAK AMERICA, | ) | Magistrate Judge Cox |
| | ) | |
| Defendants. | ) | |

**DEFENDANT, NELSON, WATSON & ASSOCIATES, LLC'S**
**RESPONSE TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Defendant, NELSON, WATSON & ASSOCIATES, LLC, through its attorneys

LITCHFIELD CAVO LLP, for its Response to Plaintiff's Motion for Class Certification, states

as follows:

Plaintiff and proposed class representative, Joanne F. Balbarin, asserts class claims

against NWA under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, et. seq.

Plaintiff alleges she was contacted by NWA on her cellular telephone without her express

consent by use of an automatic telephone dialing service and/or artificial or prerecorded voice. (Consolidated Complaint – Class Action, Docket Entry "DE" # 43 ¶ 165).

## I. PLAINTIFF FAILS TO PROVIDE ANY AUTHORITY IN SUPPORT OF A RIGHT TO CERTIFY A CLASS IN THIS ACTION.

None of the Seventh Circuit cases cited by Plaintiff that certified TCPA claims are applicable in this matter. In fact, the cases relied upon by Plaintiff demonstrate that this matter should not be certified. All of the cases involve a class action dependent on advertisements sent by mass standardized faxes.

In *Hinman v. M and M Rental Center, Inc.*, 545 F.Supp.2d 802, 805-807 (N.D.Ill.2008), the defendant engaged a third party to send an advertisement to a list of fax numbers that the defendant purchased. This Court held the commonality and typicality were met because "defendant engages in a **standardized course of conduct** vis-à-vis the class members; and plaintiffs' alleged injury arises out of that conduct." (emphasis added). *Id*. at p. 806. The Court further noted, "The fax broadcasts at issue were sent *en masse* to recipients identified on a singular 'leads' list obtained from a singular source." (emphasis in original). *Id*. at p. 807. In explaining the decision in *Hinman,* this Court stated in *Saf-T-Gard Intern., Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 315 (N.D.Ill.,2008) that

> [t]he court [*Hinman*] further observed that [TCPA cases involving mass faxes] **failed to appreciate the nature of fax advertising as "an organized program" of mass communication, rather than as occasional or sporadic transmissions. In light of the nature of fax advertising**, the *Hinman* court found that **consent likely presented a common issue**, rather than an individual one.

(emphasis added).

Similarly, in *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 142-143 (N.D.Ill.2009), defendant also engaged a third party to send an advertisement to a list of fax

numbers that the defendant purchased. Thus, this Court concluded that the "Defendants' behavior . . . likely precludes individualized defenses of consent. *Id*. at 143. *G.M. Sign, Inc. v. Group C Communications, Inc.*, 2010 WL 744262, *3 (N.D.Ill. February 25 2010) (Judge John Darrah), also involved a defendant retaining third party to send an advertisement to a list of fax numbers that the defendant purchased. Again, in *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 679 F.Supp.2d 894, 898 (N.D.Ill.2010), the defendant order a "**wholly blind solicitation**." (emphasis added).

In *Holtzman v. Turza*, 2009 WL 3334909, *6 (N.D.Ill. October 14, 2009)( Judge Robert Gettlemen), the defendant hired a third party advertiser to send an advertisement to a list of fax numbers that included fax numbers purchased by the defendant and fax numbers obtained voluntarily at seminars. The defendant admitted that it could easily distinguish between the fax numbers purchased from the numbers obtained at seminars. *Id*. Thus, in rejecting the argument that an individual investigation would be necessary to determine if each class member consented to receive the fax, this Court held that there was "**a class-wide basis for distinguishing** which recipients gave consent and which did not." (emphasis added). *Id*.

In *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 2009 WL 2581324, * 5 (N.D.Ill. August 20, 2009) (Judge Virginia Kendall), the defendant mass faxed a advertisement to fax numbers it purchased. Again, in rejecting the argument that an individual investigation would be necessary to determine if each class member consented to receive the fax, this Court held that "[f]actual variations amongst class members' claims, however, do not necessarily defeat class certification as long as the representatives claims are based on the **same course of conduct** and legal theory as the class as a whole. Notably, here the faxes were sent to anonymous third party fax lists procured by [seller of fax numbers] which [defendant] did not review." (emphasis added). *Id*.

Similarly, in *G.M. Sign, Inc. v. Franklin Bank, S.S.B*, 2008 WL 3889950, *3 (N.D.Ill. August 20, 2008) (Judge Charles Kocoras), this Court certified a class consisting of a list of thousands of fax recipients whose number were purchased by the defendant because the defendant admitted that it never received permission from anyone to send the faxes and because defendant could identify the limited number of recipients with whom defendant had a pre-existing business relationship. In *G.M. Sign, Inc. v. Franklin Bank, S.S.B,* the defendant hired a third party advertiser to send an advertisement to a list of purchased fax numbers. This Court noted that the defendant "**engaged in a standardized course of conduct** by sending the subject advertisement to the recipients." (emphasis added). *Id.*

In *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892, *2-4 (N.D.Ill. May 27, 2008) (Judge Marvin Aspen), the defendant mass faxed an advertisement to fax numbers it purchased. In again rejecting the argument that an individual investigation would be necessary to determine if each class member consented to receive the fax, this Court pointed out that "Plaintiff's claims and the other proposed class members' claims **all arise from Defendant's October 2006 fax campaign**." (emphasis added). *Id.* at *4.

In addition, the cases relied upon by Plaintiff from outside the Seventh Circuit also involved advertisements sent by mass standardized faxes. In *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 647 (W.D.Wash., 2007) the defendant sent the same fax to a database of fax numbers that it purchased from a third party. In rejecting the argument that an individual investigation would be necessary to determine if each class member consented to receive the fax, the court reasoned that "whether the recipients' inclusion in the [database] constitutes express permission to receive advertisements via facsimile is **a common issue**." *Id.* (emphasis added). Thus, the Court held that "it is undisputed that [the defendant] **engaged in a common course of**

**conduct** by obtaining the facsimile numbers in the same way and sending the same broadcast facsimile to all recipients within a short period of time as part of the same effort to generate new business." *Id.* (emphasis added).

Similarly, in *American Home Services, Inc. v. A Fast Sign Co., Inc.*, 287 Ga.App. 161, 161, 651 S.E.2d 119, 120 (Ga.App.,2007) the defendant hired a third party advertiser to send an advertisement to a list of potential customers. In upholding a lower court's class certification, the Georgia Court of Appeals pointed out that class was limited to recipients who did not have an "established business relationship" with the defendant. *Id.* In *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. 94, 96, 50 P.3d 844, 846 (Ariz.App. Div. 1, 2002) the defendant also hired a third party advertiser to send an advertisement to a list of potential customers with no established business relationship. *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 894 -895 (W.D.Tex.,2001), involved a TCPA lawsuit by the State of Texas against a company that sent fax advertisements on behalf of third parties to database of fax numbers. Finally, *Hooters of Augusta, Inc. v. Nicholson*, 245 Ga.App. 363, 537 S.E.2d 468 (Ga.App.,2000) upheld the certification of class consisting of recipients who received an unsolicited fax advertisement from the defendant via a third party.

As plaintiff fails to provide valid authority to bring this specific action or certify the class as defined against Defendant NWA, this Court must deny plaintiff's motion for class certification.

## II.     THE PROPOSED CLASS, AS TO DEFENDANT NWA, FAILS AS A MATTER OF LAW

Plaintiff's claims fail as a matter of law because plaintiff cannot satisfy the requirements of Fed. R. Civ. P. 23. In particular, plaintiff cannot meet the typicality, commonality, predominance and superiority requirements of Rule 23(a) because plaintiff's TCPA claims are

subject to unique defenses. Plaintiff also cannot satisfy the "predominance" and "superiority" requirements of Rule 23(b)(3) because of the numerous individual inquiries necessary in order for this case to be tried. *See Hicks v. Client Services, Inc.* 2008 WL 5479111 *8 (S.D. Fla. December 11, 2008 (Judge William Dimitrouleas) ("Whether the burden is on the plaintiff or the Defendant, ultimately consent is an issue that would have to be determined on an individual basis at trial … Therefore the Court finds that class certification of the TCPA claim would be improper for lack of commonality under Rule 23(a), and predominance under Rule 23(b)(3).").

### A. Plaintiff Cannot Establish Commonality and Predominance.

Plaintiff alleges that there are common questions that predominate and seeks class certification under Fed. R. Civ. P. 23(b)(3). Due to the relatedness of the commonality requirement under Rule 23(a) and the predominance factor of Rule 23(b)(3), it is appropriate to consider commonality and predominance together. *Guillory v. American Tobacco Co.*, 2001 WL 290603 *6 (N.D.Ill. March 20, 2001) (Judge Ronald Guzman). To satisfy the commonality factor, plaintiff must show there are questions of law or fact common to the class. *Kohen v. Pacific Inv. Management Co., LLC*, 244 F.R.D. 469, 476 (N.D. Ill. 2007). If the complained of conduct was in any way atypical from defendant's standard business conduct, the commonality element fails. *Cedeno v. Fieldstone Mortgage Co.*, 2002 WL 1592759 at *3. (N.D.Ill. July 19, 2002) (Judge Ronald Guzman). Meanwhile, Rule 23(b)(3) requires a showing that "questions of law or fact common to the members of the class predominate and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Guillory* at *6.

Here, plaintiff is unable to meet her burden to demonstrate either commonality or predominance. *Hicks v. Client Services, Inc.* 2008 WL 5479111 (S.D. Fla. December 11, 2008)

(Judge William Dimitrouleas) is directly on point and should control the outcome of the instant motion. *Hicks* is the only published federal court decision that has evaluated whether a TCPA claim alleging improper calls to a cellular phone can be certified. The plaintiff in *Hicks* brought a TCPA claim and sought to prosecute the action on behalf of a class of persons that were called on their cellular phones through an automatic telephone dialing system, or an artificial voice. *Id*. at p. 1. After first noting that consent is an essential individual issue under the TCPA, the *Hicks* court concluded that class certification was not proper for lack of commonality and lack of predominance. *Id at pp. 7-8*. The Court distinguished the certification of a TCPA claim involving a mass fax campaign in *Kavu* by reasoning as follows:

> [the *Kavu*] court ruled in favor of class certification specifically because the defendant in that case asserted that **consent arose from the class members' voluntary inclusion in the single database** from which the defendant obtained their numbers. **Those particular circumstances lent themselves to resolving the consent issue on a class-wide basis; they do not exist here.**

*Id at p. 7.* (emphasis added). Unlike in a case involving a mass fax solicitation sent to a database of fax numbers, the Court noted that the plaintiff could not demonstrate a lack of consent on behalf of the class members without "a trial degenerating into mini-trials on consent of every class member." *Id at p. 8.* Finally, the *Hicks* court was not swayed by plaintiff's argument that defendant had the burden of establishing consent, concluding that "it is irrelevant who has the burden. Whether the burden is on the Plaintiff or the Defendant, ultimately consent is an issue that would have to be determined on an individual basis at trial." *Id*. at *8.

Several other courts have held that proof of consent is an essential individual issue under the TCPA that makes class certification inappropriate. In *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 322-323 (5th Cir., 2008), the defendant sent an advertisement to a list of fax numbers that included fax numbers purchased by the defendant and fax numbers obtained

voluntarily through established business relationships. The defendant argued that there was no class-wide basis by which to distinguish those fax recipients who had consented to receiving faxes from those who had not consented and thus, the determination of consent would require hundreds of mini-trials. *Id*. at 323. The Fifth Circuit agreed and reasoned, "**Unlike the single-source contact** list in *Kavu*, here BioPay culled fax numbers from a variety of sources over a period of time, such that class-wide proof of consent is not possible." (emphasis added) *Id*. at 329. In *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D.Pa.,1995), the defendant randomly faxed an advertisement to potential customers. The Eastern District of Pennsylvania denied class certification because the determination of established business relationships would require mini –trials for each class member. *Id*. The Court reasoned that "the gravamen of plaintiff's complaint is **not a common course of conduct by the defendant, but rather a series of individual transmissions under individual circumstances**, each of which is an alleged violation of the statute." (emphasis added) *Id*.; *see also Levitt v. Fax.com*, 2007 WL 3169078, 5 (D.Md., May 25, 2007)(same).

The same impediments to commonality and predominance that were present in *Hicks* are present here. Random and individualized telephone calls to consumers is far more complex that an **organized program of a standard fax sent** to a database of unsolicited fax numbers. Principally among these concerns would be whether the specific class member provided prior express consent to receive the calls. Each consumer account will have to be reviewed for express prior consent on an individual basis. Subpoenas and other discovery will be required for each potential class member identified. Such a search is relevant as it will substantiate NWA's defense that express prior consent was given prior to any calls being made. (See Exhibit 1, Customer Agreement at "Communications" paragraph, bates page NWA 00161, produced as part

of a subpoena response for the credit card records of Joann F. Balba from Capital One.). This provision allows contact with a debtor by a number of means, including "on your mobile telephone." *Id.* Thus, every customer agreement creating a class member's account would need to be reviewed to determine if the class member agreed to being called on a cellular phone. In addition, unlike a standardized fax, testimony will be required to determine if a class member at any time during a telephone conversation consented to being called on a cell phone.

There are other ancillary individual issues as well, such as whether each class member was 1) the owner of the cell phone,[1] 2) whether the number called was a cell number at the time the call was placed, 3) whether the number was recently ported as a cell number, 4) whether the owner of the phone was the intended recipient of the call and, whether the call placed was in an effort to collect a debt.[2] <u>Each</u> of these individual inquiries would be necessary for <u>each</u> claimant and should preclude certification of the class. These issues are independently relevant on the issue of whether NWA violated the TCPA related to each class member. Because each of these issues for each class member is an essential element of the claim, NWA would have the right to delve into each issue at trial. If NWA were not allowed to "individually probe into the peculiarities of each class member's case, the result would be that [NWA] would be denied the opportunity to prepare a defense." *Guillory*, 2001 WL 290603 at *9. Therefore, any trial of this case would necessarily denigrate into individualized inquiry into the merits of every class

---

[1] Although a deposition of the plaintiff has yet to be taken, evidence appears as if plaintiff did not even own the telephone that was allegedly called by NWA. The owner of the telephone, as identified on the applicable billing statements at the time the calls were placed is noted to be Richard Saenz, not the plaintiff, Joanna F. Balbarin. (See Exhibit 2, AT&T invoices for cellular services from March through June 2008). Such discovery would be necessary on an individual basis for each class member to establish ownership – an essential elements of each claim.

[2] In a significantly similar case, plaintiff claimed she was contacted in violation of the TCPA for a debt she did not own. The court noted that "all debt collection circumstances are excluded from the TCPA's coverage. This finding is broad enough to cover a debt collection activity that contains a non-debtor." See *Meadows v. Franklin Collection Service*, 2010 WL 2605048 *16-17 (N.D. Alabama, June 25, 2010) (Judge L. Scott Cooger).

member's claim. Such a result is contrary to the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3).

A similar result was reached in *Cedeno v. Fieldstone Mortgage Co.*, 2002 WL 1592759 (N.D.Ill. July 19, 2002) (Judge Ronald Guzman). In that case, the plaintiff brought a class action suit alleging that consumers were being charged for excessive broker fees on their mortgages in violation of the Real Estate Settlement Procedure Act. *Id.* Upon consideration of the class certification motion, the court recognized that "[w]hether or not each individual plaintiff was charged a reasonable fee may depend on several factors and cannot be determined on a class wide basis." *Id.* at *6. The court concluded that class certification was not appropriate because the court would be required to assess "each individual case to determine if each plaintiff was charged unfairly." *Id.*

Similarly, in *Guillory v. American Tabacco Co.*, 2001 WL 290603 (N.D.Ill. March 20, 2001) (Judge Ronald Guzman), the court found that the predominance factor was lacking because of the individual issues inherent in the claims. For example, individual inquiries would be required to prove each class member's exposure to defendants' allegedly false advertisements. *Id.* at *6. In other words, the "highly individualistic factual determinations" precluded certification because it would require hundreds individual inquiries to be address at trial. *Id.* at *8-9.

Numerous cases have been denied class treatment in similar situations because individual liability determinations preclude a finding of predominance. *See, e.g., Howland v. First American Title Insurance Co.*, 2009 WL 2180832, *2 (N.D. Ill. July 21, 2009) (Judge Ronald Guzman), (denying class certification for claimed violation of the Real Estate Settlement Procedures Act because liability determinations would need to be made on a case-by-case basis);

*Anderson v. New Dimension Financial Services, L.P.*, 2001 WL 1155251 (N.D. Ill. September 28, 2001) (Judge Ronald Guzman) (denying motion for class certification because an individual inquiry and examination of individual documents would be necessary for each class member to determine liability); *Ploog v. HomeSide Lending, Inc.*, 2001 WL 1155288 at *7 (N.D.Ill. September 28, 2001) (Judge Ronald Guzman) (liability determinations that were both individual and fact-intensive precluded finding of predominance); and *Bethards v. Bard Access Systems, Inc.*, 1995 WL 75356, *3 (N.D. Ill. February 22, 1995) (Judge Ronald Guzman) (predominance of individual issues precluded class certification).

Express prior consent is an individual element of inquiry that will have to be decided on a case-by-case basis at some time by this court. To permit certification at the outset of this case and then explore the issue of consent runs counter to judicial economy and the judge's role as gate keeper for these types of claims.

## B.    The Proposed Class Is Not Identifiable

Before certifying a class, one of the implied prerequisites is that the class must be sufficiently defined to demonstrate that a class actually exists. *Guillory*, 2001 WL 290603 at *2. In fact, a "class must be clearly defined so that a Court can determine whether a particular individual is a member of the proposed class. Whether the description of a class is sufficiently definite to permit ascertainment of the class members must be determined on a case-by-case basis. However, the description of the class must not be so broad as to include individuals who are without standing to maintain the action on their own behalf." *Id*. Because there is a definiteness requirement implied in Rule 23(a), a class must be "sufficiently definite to permit ascertainment of the class members." *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

11

Here, class membership is not ascertainable merely by investigating objective criteria, but instead will require individual assessments regarding the viability of each class member's claim. Even if NWA can identify numbers that it called during the class period that are *currently* cell phones, due to the porting of numbers, there is no way to definitively identify whether the number called was a cell number at the time that the call was placed, *absent asking each call recipient*. A class definition that will require the Court to investigate the merits of each class member's claim is deficient. *See, e.g., Lau v. Arrow Financial Services,* 245 F.R.D. 620, 624 (N.D. Ill. 2007), *citing Pastor v. State Farm Mutual Auto Insurance Co.*, 2005 WL 2453900 (N.D. Ill. September 30, 2005) (Judge Suzanne Conlon) (class certification denied because the class definition required the court to "address the central issue of liability in order to determine class membership"), *aff'd* 487 F.3d 1042 (7th Cir. 2007); *see also Rahman v. Chertoff*, 530 F.3d 622, 625 (7th Cir. 2008) (class certification not proper when the class members could not be identified); *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 580 (N.D. Ill. 2005) (a class should not be certified if it is "over inclusive and encompasses . . . potential members without any identifiable basis for standing"), *aff'd* 472 F.3d 507 (7th Cir. 2006); *Swain v. Brinegar*, 517 F.2d 766, 779-80 (7th Cir. 1975).

### C.     Plaintiff's TCPA Claim Is Not Typical Of The Class Claims.

Another requirement imposed by Fed. R. Civ. P. 23(a) is that the claims of the class representative be typical of the claims of the class. *Cedeno v. Fieldstone Mortgage Co.*, 2002 WL 1592759, *3. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members *and his or her claims are based on the same legal theory*." *Id.* (emphasis added), *quoting De la Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). A claim is not typical if the proving of the

plaintiff's claim does not necessarily prove all of the proposed class members' claims. *Id.* As a result, typicality is lacking and certification is not proper where liability determinations are individual and fact intensive. *Id.*

A defense that is unique to a proposed class representative is relevant in determining whether the plaintiff's claims are typical of the class. *Cedeno*, 2002 WL 1592759 at *4. Individual defenses that can be asserted against the class representative will preclude a finding of typicality when such issues are likely to usurp a significant portion of the plaintiff's time or become a focus of the litigation such that the class is likely to suffer. *Id.*

In this case, plaintiff's TCPA claim is *not* typical of the class claims. Unlike the class she purports to represent, contact with plaintiff appears to be the result of alleged credit card fraud. See, e.g. DE 43 ¶¶ 40-41; 71-73. The source used by NWA to locate each putative class member's cellular telephone number will vary, thus making it impossible to determine consent on a class basis. This the obverse of the mass-fax cases cited by plaintiff wherein the defendants had a single source from which they obtained the fax numbers.

Moreover, to establish that each class member's rights under the TCPA were violated, the Court will need to analyze individualized factual issues for each class member. For example, an analysis will be required to determine if the called party was the owner of the phone, if the called party provided prior express consent for the call, and whether the number called was a cell phone number at the time that the call was placed. The class will be unfairly prejudiced due to the inability to resolve these issues on any manner other than individual inquiries. *See J.H. Cohn & Co. v. American Appraisal Associates, Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) ("even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class") and *Ploog v. Homeside Lending, Inc.*, 2001 WL 1155288 at *6

(typicality element not met when it was necessary to engage in individual inquires related to defendants' liability).

**D.**      **Plaintiff Cannot Fairly and Adequately Represent the Class.**

Rule 23(a) imposes an obligation that the class representative fairly and adequately protect the interests of the class. *Cedeno*, 2002 WL 1592759 at \*3. The adequacy of a proposed class representative is defeated if there exists a specific defense that is "unique, arguable and likely to usurp a significant portion of the litigant's time and energy." *Id.* at \*4. Stated another way, the proffered plaintiff is not a proper class representative "where it is predicable that a major focus of the litigation will be on an arguable defense that is unique to the named plaintiff." *In re VMS Securities Litigation*, 136 F.R.D. 466, 475 (N.D. Ill. 1991).

An essential element of a cause of action under the TCPA is that the calls to the cellular number had to be made without prior express consent. A major focus of the litigation has been, and continues to be, whether the class representative provided prior express consent when she applied for her Capital One credit card and whether the calls were made in an effort to collect a debt. A significant portion of the parties' time will likely go to motion practice about whether plaintiff gave prior express consent, or whether consent was provided by any of the other potential class members. A determination of this issue is critical to first establish whether plaintiff has a claim under the TCPA and will continue to be the primary focus of the parties' time and resources. Such a detour demonstrates that plaintiff is *not* a proper class representative.

WHEREFORE, defendant NWA requests that this court deny certification of plaintiff's proposed class in its entirety as it relates to defendant NWA and for any other relief this court deems appropriate.

LITCHFIELD CAVO, LLP.

Jason E. Hunter, Esq. (06237345)
LITCHFIELD CAVO, LLP                    By:    /s/ Jason E. Hunter
303 West Madison Street , Suite 300            Attorneys for the defendants,
Chicago, IL 60606-3300                         Nelson, Watson & Associates, LLC
(312) 781-6677
(312) 781-6630 fax

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, being first duly sworn upon oath, depose, and say that I caused to be served the foregoing Response to Plaintiff's Motion to Compel Answer to Interrogatory Number 8 by electronically filing the same with the Clerk for the U.S. District Court for the Northern District of Illinois, Eastern Division, a copy of which was then forwarded to each attorney of record by CM/ECF on the 20th day of September, 2010.


/s/ Jason E. Hunter

Jason E. Hunter, Esq. (06237345)　　Attorneys for the defendants,
LITCHFIELD CAVO, LLP　　Nelson, Watson & Associates, LLC
303 West Madison Street , Suite 300
Chicago, IL 60606-3300
(312) 781-6677
(312) 781-6630 fax