IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOANNE F. BALBARIN, on behalf of herself and a class and subclasses,<br><br>            Plaintiff,<br>v.<br><br>NORTH STAR CAPITAL ACQUISITION, LLC, et al.,<br>            Defendants. | 10 C 1846<br><br>Judge Bucklo<br>Magistrate Judge Cox |

**DEFENDANT NELSON, WATSON & ASSOCIATES, LLC'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO ALTER OR AMEND
THE COURT'S JANUARY 5, 2011 ORDER AND TO DECERTIFY THE CLASS**

Defendant NELSON, WATSON & ASSOCIATES, LLC ("NWA"), by its undersigned attorneys, submits its Memorandum in Support of Its Motion to Alter or Amend the Court's January 5, 2011 Order and to Decertify the Class.

### INTRODUCTION

NWA asks this Court to alter or amend its January 5, 2011 Order and to decertify the class, because the Seventh Circuit in *CE Design Ltd. v. King Architectural Metals, Inc.*, ___ F.3d ___, Case No. 10-8050, 2011 WL 938900 (7th Cir. March 18, 2011) (Exhibit A hereto), addressed the two issues that this Court wrongly decided and that NWA raised in its argument against class certification: (1) the sources where consent under the Telephone Consumer Fraud Act ("TCPA"), 47 U.S.C. § 227 may be found and (2) the existence of a defense against the class representative. As in *CE Design,* this Court misunderstood the TCPA consent issue: what was in NWA's files is not the test of whether consent was given under the TCPA or *CE Design.* This Court did not acknowledge that consent can be found in other sources, and as a result the Court certified a flawed class definition that wrongly interprets the TCPA's exemption of consent and thus deprives NWA of the consent defense. The definition assumes consent under the TCPA is

limited to NWA's records showing a class member provided a number to NWA or the original creditor. This is wrong under *CE Design* and the TCPA. Once this Court applies the proper analysis, it will acknowledge the necessity of individual inquiries as to consent, and that NWA is entitled to examine each putative class member for evidence of consent. These individualized inquiries regarding consent, and other individualized questions necessary to identify class members under any class definition, prevent the certification of any class, and this Court should decertify the class it certified in its January 5, 2011 Order.

**ARGUMENT**

**I. THIS COURT WRONGLY DECIDED CONSENT AND CERTIFIED A FLAWED CLASS DEFINITION**

This is most likely NWA's last chance to argue before this Court the issues the Court incorrectly decided before this case continues on the path as a class action. What *CE Design* said regarding the economic consequences of certification is also true here: if the class remains certified, NWA faces dire consequences without even the statutory consent defense. *See CE Design,* 2011 WL 938900, at *1 *2. ("Certification as a class action can coerce a defendant into settling on highly disadvantageous terms regardless of the merits of the suit"; the defendant was "facing a very large potential liability" under the TCPA and that fact was "relevant . . . to the need for a rigorous analysis of whether to certify a class").

This Court ruled on the consent issue in defining the class - the definition provides "(e) where Defendant Nelson, Watson & Associates, LLC's records do not show" consent. January 5, 2011 Order. *CE Design* said that this Court did not properly consider consent in that case and that the consent was outside of the defendant's files, *i.e.*, the publication of CE Design's fax number in the industry's *Blue Book* and the number's publication on CE Design's website. *CE Design*, 2011 WL 938900, at *3 *4, *5, *6. In this case, the Court wrongly ruled on the consent issue by defining the class as called persons where NWA's records did not show consent. Thus,

in dealing with NWA as well as the defendant in *CE Design*, this Court incorrectly viewed the sources of the TCPA consent. The issue of consent is a matter of looking at outside sources besides NWA's records, *e.g.*, the original creditor's files and contracts with providers of cellular telephone services. In fact, the Federal Trade Commission ("FCC") has stated that a debt collector receives the benefit of a consent given to the creditor. *In re Matter of Rules and Regulations: Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 565 (FCC 2008), 23 FCC Red. 559, 2008 WL 65485, at *3. Under the TCPA and *CE Design*, allowing a defendant to ascertain consent by looking at third-party sources is the appropriate approach. Neither the statute nor the Seventh Circuit limits consent to the contents of a defendant's records. The Court perhaps accepted this definition based on a misunderstanding that everything that ever existed on a debtor's account with the creditor somehow was also contained in NWA's records. That just is not the case. NWA does not receive everything in the creditor's file.

As a result of the flawed analysis, this Court wrongly certified a class definition in the face of the FCC's recognition of the difficulties of determining the consent issue. In explaining consent, *CE Design* quoted a 2003 Federal Commission Regulation:

> But it [the regulation] adds that "given the variety of circumstances in which such numbers may be distributed (business cards, advertisements, directory listings, trade journals, or by membership in an association), it [is] appropriate to treat the issue of consent in any complaint regarding unsolicited facsimile advertisements *on a case-by-case basis*" and that "express permission to receive a faxed ad requires that the consumer *understand* that by providing a fax number, he or she is agreeing to receive faxed advertisements." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14129 (FCC 2003), 2003 WL 21517853 (emphases added). A more recent regulation states that "the fact that [a] facsimile number was made available in a directory, advertisement or website does not *alone* entitle a person to send a facsimile advertisement to that number." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 21 F.C.C.R. 3787, 3796 (FCC

3

2006), 2006 WL 901720 (emphasis added). The words we've italicized in these two passages create uncertainty about the application of "express invitation or permission" to CE's conduct.

2011 WL 938900, at *5. (emphases in original). Although the Seventh Circuit was discussing consent in the context of faxes, its logic applies here. NWA submits that the analogous consent issue in this proceeding is also an issue to be treated on a case-by-case basis, i.e., the sources of consent as to each class member.

In *Greene v. DirecTV, Inc.*, 10 C 117, 2010 WL 4628734, at *3 (N.D.Ill. Nov. 8, 2010), Judge Kocoras granted defendants' motion for summary judgment against a TCPA claim because the plaintiff had provided a third party, Equinox, with her cellular telephone number. The court quoted the FCC:

> The Federal Communications Commission ("FCC") has clarified what constitutes "express consent" under the statute pursuant to its authority to create rules and regulations implementing the TCPA. *See* 47 U.S.C. § 227(b)(2). Specifically, the FCC ruled that:
>
>> persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached.
>
> In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 FCC Rcd. 8752, 8769 (1992).

*Greene*, 2010 WL 4628734, at *3.

Because of this Court's erroneous view of consent as limited to numbers in NWA's records, the Court certified a flawed class definition. Legally, the TCPA does not define consent, or a violation under the TCPA, in terms of the contents of the defendant's files, which this Court did. It is the existence of consent, not the presence or absence of telephone numbers in a defendant's files, that is the relevant issue. 47 U.S.C. § 227(b)(1)(A); *see CE Design;*

130076130v1 0911500 00004

*Greene*. Factually, consent may have been given but the consent is not in defendant's records. The Court's reasoning in certifying a class did not address the other sources in which consent may be found. For example, it may have been given to the original creditor at some point, or the terms and conditions of class members' contracts may contain consents. Therefore, these other sources should be examined for each class member, including perhaps inquiring of the putative class member on consent.

This Court's erroneous class certification definition has already harmed NWA's efforts to get consent discovery. The district court in Florida quashed NWA's subpoena for records of a provider, Certegy Check Services, Inc. *Balbarin v. North Star Capital Acquisition, LLC,* Case No. 8:11-mc-9-T-33MAP ( M.D. Fla., Feb. 15, 2011) (Exhibit B hereto). NWA was trying to ascertain whether class members who were subscribers consented to receive calls on their cell phones. The district court based its Order upon, among other matters, this Court's definition of the class:

> Further, the Illinois district court defined the certified class as all persons with cellular telephone numbers in named area codes who, within a limited time period, received automated calls with a prerecorded message from NWA in an attempt to collect a debt on behalf of North Star "where Defendant [NWA's] records do not show that the person provided the number to Defendant [NWA] or the original creditor." (doc. 5, Exh. B).

*Id.* at p. 2.

The district court also relied upon Magistrate Judge Cox's ruling on the plaintiff's motion to compel the production of documents on consent, and highlighted language in one of her orders concerning how NWA could assert the defense in good faith when it did not have documents to evidence it. The district court observed:

> Given the Illinois district court's findings and limitation of the certified class, NWA's apparent need for these documents from Certegy is questionable at best and its contention that it is under court order in the North [sic] District of Illinois to produce the

5

> documents it seeks from Certegy borders on the disingenuous as the documents it should rely upon for its defense should already be in its possession.

*Id.* at p. 2.

Thus, this Court wrongly handled the consent issue in defining the class the way it did. *CE Design*, the FCC, and *Greene* correctly treated the consent issue. *CE Design* and *Greene* allowed consent to be shown based on facts outside of defendant's records, and the TCPA does not limit the sources from which consent can be found. It is of no consequence whether the consent from outside sources is applied to a plaintiff class representative, as in *CE Design*, or individual putative class members, as in this case. Both this Court and the Florida district court were wrong – *CE Design* shows that TCPA consent can be proven from factors unknown to NWA at the time of the calls. As a result, this Court should decertify the class.

## II. THE ISSUE OF CONSENT PRECLUDES CERTIFICATION OF A VALID CLASS

If this Court follows *CE Design*, the FCC, *Greene* and the TCPA, it will properly address the consent issue and, in doing so, will realize that it is impossible to certify a valid class. Specifically, there are individual inquiries as to consent unrelated to whether the class members provided their cellular telephone numbers to NWA, including a review of the underlying contracts and a review of every account. Ascertaining consent under the TCPA will require inquiries on a case-by-case basis. Under the appropriate view of consent, NWA is entitled to examine each individual class member for evidence of consent. *CE Design,* 2011 WL 938900, at *5.

Just as NWA has individual inquiries concerning consent, so too are there individual inquiries required to even identify class members under any class definition. These inquiries require efforts to ascertain if the person identified in NWA's accounts even received a call from NWA, as well as whether the call was made to a cell phone at the time the call was made. Under

6

any definition, this Court has effectively certified a class of Illinois individuals who are identified by NWA's debtor account records as having received a collection call from NWA on a cell phone. However, NWA's records do not indicate whether the number currently identified as a cell number on the account belongs to the account holder, or if the number was a cell phone number at the time it was called.

As both parties have explained, the location information provided to NWA by the original creditor may not be current. Accordingly, NWA sometimes conducts a "skip trace" of debtors' accounts as a method of obtaining location information for debtors. The information from a skip trace oftentimes includes additional telephone numbers unrelated to the debtor. As with all the data provided under a skip-trace, the phone numbers could be the debtor's former number, current number, a relative's number, or an unrelated phone number. Because the data obtained by NWA through a skip-trace is a snapshot of the information associated with an identity as of a certain point in time, the data do not reveal when the listed cell phone number began service or changed numbers. Nor do the data reflect any changes as to who was actually using the particular cell phone number, or whether the number has recently been changed, or recently ported (transferred), to be associated with a cell phone.

The debtors identified in NWA's account files are not necessarily class members. It cannot be assumed that each debtor identified by NWA's debtor accounts as now having a cell number associated with it actually received a call on his or her own cell phone. The phone number that is identified in NWA's debtor account as a cell number might not belong to the debtor. It could belong to a relative, or be a former number of the debtor belonging to someone else at the time it was called. The number might not have been associated with a cell phone at the time it was called (up to four years ago). NWA can only ascertain that the number is currently a cell number that a skip-trace identifies as relating to the debtor at some time – it

130076130v1 0911500 00004

cannot determine to whom it belonged at the time it was called, or whether it was in fact a cell number at the time it was called.

NWA will have to ascertain from thousands of debtor account records who actually received calls on numbers now associated with cell phones, determine if the numbers belonged to the NWA account holder, and then determine if the numbers were cell numbers at the time they were called. NWA's data do not reveal such information. The undertaking to ascertain this information is huge, if it is even possible. At a minimum, NWA would have to identify the service providers (at the time the number was called, not today), subpoena the names associated with those numbers, and compare those to the names of its account holders. However, even that would not reveal account holders (like the plaintiff) who were not the subscribers on the number called at the time the number was called.

In order to accurately identify the class, NWA will need to do more. NWA will have to make thousands of inquiry calls to the numbers in its debtor files to ascertain whether the call it made was, at the time, a cell number belonging to the account holder or someone else (such as a wrong number or a relatives' number). This process will involve extensive discovery on every number in its accounts that are currently identified as a cell number.

Under Rule 23(c)(1)(C), an "order that grants or denies certification may be altered or amended before final judgment." If certification of a class is later deemed to be improvident, the court may decertify, alter the certification, or permit intervention. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890 (7th Cir. 1981), *cert. denied* 455 U.S. 1017 (1982); *Walker v. Bankers Life & Cas. Co.,* No. 06-6906, 2008 WL 2883614, at *9 (N.D.Ill. June 28, 2008) (decertifying class). A court's initial determination to certify a class is inherently tentative, and the court remains under a continuing obligation to review whether proceeding as a class is appropriate. *Walker,* 2008 WL 2883614, at *9, *citing Ellis v. Elgin*

130076130v1 0911500 00004

*Riverboat Resort,* 217 F.R.D. 415, 419 (N.D. Ill. 2008) (decertifying class) (*quoting Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 n. 11 (1978)). Here, in light of both the law on consent and the factual realities of individualized "case-by-case" inquiries necessary to ascertain consent and identify class members, this Court's certification of a flawed class definition was improvident. *CE Design*, quoting the FCC, 2011 WL 938900, at *5. The Court should decertify the class.

### III. BALBARIN IS NOT AN ADEQUATE REPRESENTATIVE AND LACKS TYPICALITY: SHE IS SUBJECT TO A VALID DEFENSE

NWA raised an issue as to Balbarin's standing under the TCPA and therefore her adequacy as a class representative. This Court disregarded NWA's argument and certified a TCPA class with Balbarin as the class representative. In *CE Design*, the defendant also made arguments against the adequacy of the plaintiff' representation of the class. The Seventh Circuit analyzed defendant's argument, vacated the class certification, and remanded the case. NWA renews its argument as to Balbarin's adequacy as a class representative and her claims lack typicality.

By disregarding NWA's arguments on Balbarin's standing, the Court in effect ruled on the merits and entered an order that would have been more appropriate in summary judgment proceedings, not at the stage of class certification. The Court observed that Balbarin was the intended recipient of the calls, and found that *Cellco P'ship v. Dealers Warranty, LLC*, No. 09-1814(FLW), 2010 WL 3946713 (D.N.J. Oct. 5, 2010), supported its decision. *See* January 21, 2010 Order. However, the "intended recipient" view is hardly settled. To NWA's knowledge, there are no Court of Appeals decisions on this view. Nor is such a view textually supported by the terms of the TCPA. This Court should not have made such a bold ruling at the class certification stage.

Even accepting the Court's possible interpretation that the class consists of intended recipients of the calls, this interpretation would involve numerous individual inquiries as set forth above in Section II. The intended recipient test for standing injects still another round of case-by-case examinations to ascertain who is in the class. NWA would have to go to great lengths to ascertain if the intended recipients answered the telephone, whether the number was a cellular telephone at the time it was called, and many other facts to determine who would be in an intended recipient class.

Finally, *CE Design* referred to the merits of a case in the context of appellate review. 2011 WL 938900, at *3. As this Court is aware, it may look beyond the pleadings to determine whether the requirements of class certification have been met. However, as a general matter, the court does not examine the merits of the case, and determination of class certification does not turn on the underlying merits of the case. *Stephens v. Gen. Nutrition Cos., Inc.,* no. 08-6296, 2010 WL 4930335, at *2 (N.D.Ill. Nov. 23, 2010), *citing Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 598 (7th Cir. 1993); *see also In re McDonald's French Fries Litigation,* 257 F.R.D. 669, 671 (N.D.Ill. 2009). Here, the Court decided the merits by eliminating the proper approach to TCPA consent by certifying a class limited to what the Defendant's records show, as opposed to whether consent was given and located in other sources. It also ruled on the merits in terms of Balbarin's standing. The whole situation mandates decertification.

## CONCLUSION

NWA is well aware that there must be finality and efficiency in the proceedings, and that a case must go forward even though, inevitably, one of the parties will be unhappy with a court's ruling. However, when the Seventh Circuit issues an opinion on similar facts in a similar procedural setting under the same statute, NWA respectfully submits that the Seventh Circuit opinion's applicability to this case should be considered.

10

For the foregoing reasons, defendant Nelson, Watson & Associates, LLC respectfully submits that the Court alter or amend its January 5, 2011 Order, decertify the class, and grant defendant such other and further relief as the Court considers proper.

    Respectfully submitted,

    NELSON, WATSON & ASSOCIATES, LLC

    By: s/David M. Schultz
        One of its Attorneys

David M. Schultz
Clifford E. Yuknis
Justin M. Penn
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Ste 300
Chicago, IL 60601
(312) 704-3000
dschutlz@hinshawlaw.com
jpenn@hinshawlaw.com